In the Matter of Stanley David LESLIE.

MAX SOBEL WHOLESALE LIQUORS et al., Creditors-Appellants,

v.

M. NOLDEN, Trustee-Appellee.

No. 73–2682.

United States Court of Appeals, Ninth Circuit.

June 27, 1975.

Vernon D. Stokes, San Francisco, Cal., for creditors-appellants.

William Kelly, San Francisco, Cal., Edwin I. Becker, Oakland, Cal., for trustee-appellee.

## OPINION

Before KOELSCH and DUNIWAY, Circuit Judges, and KELLEHER,* District Judge.

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

DUNIWAY, Circuit Judge:

Twelve creditors of Leslie, the bankrupt, appeal from the district court's affirmance of an order of the referee in bankruptcy directing that certain proceeds from the sale of the bankrupt's liquor business be turned over to trustee of the bankrupt estate. We affirm.

The facts are not in dispute. In March, 1971, the bankrupt executed an agreement to sell his California on-sale liquor license and related business assets to one Daniels for $25,000. In April, 1971, as required by §§ 24073–74 of the California Business and Professions Code, an escrow was opened in which Daniels deposited the consideration. In August, 1971, the state Alcoholic Beverage Control Department (ABC) approved the sale. On September 9, 1971, Leslie filed his petition in bankruptcy.

Sections 24073–74 provide that transfer of a licensed liquor business must be approved by ABC and that before the filing of the transfer application the transferee must deposit in an escrow the consideration for both the license itself and the other business assets. Upon ABC approval, the license and other assets pass to the transferee and the escrow holder distributes the proceeds to the seller and his creditors following a specified procedure. If the proceeds are insufficient to pay all of the creditors' claims, they are distributed in accordance with a priority scheme delineated in § 24074.

The appellant-creditors claim that they are entitled to share the funds remaining in the escrow by virtue of the sixth priority. Priority Sixth reads:

Sixth, to the payment of claims for goods sold and delivered to the transferor for resale at his licensed premises and the payment of claims for services rendered, performed, or supplied in connection with the operation of the licensed business.

Other general creditors are relegated to priority Seventh.

■ Appellants are wrong. Upon Leslie's bankruptcy, title to the proceeds in question passed to the trustee under § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5), for distribution in accordance with the priorities enumerated in § 64 of the Act, 11 U.S.C. § 104, with any remainder to be divided pro rata among the bankrupt's general creditors. Conflicting priorities established by state law must yield upon the intervention of bankruptcy to superior federal law. *See Elliott v. Bumb,* 9 Cir., 1966, 356 F.2d 749, 754–5; *In re Crosstown Motors, Inc.,* 7 Cir., 1959, 272 F.2d 224, 227. Section 24074 creates statutory priorities, not statutory liens. *See Grover Escrow Corp. v. Gole,* 1969, 71 Cal.2d 61, 65, 77 Cal.Rptr. 21, 23, 453 P.2d 461, 463 [characterizing § 24074 as establishing a mandatory and exclusive system of priorities].

The cases relied on by appellants are inapposite. In *United States v. State of California,* 9 Cir., 1960, 281 F.2d 726, we held that ABC could validly condition transfer of a bankrupt's liquor license on payment of delinquent state taxes, even though the license was subject to a paramount federal tax lien and the transferee was the purchaser at an auction held to satisfy the lien. The panel observed that the issue in the case was not the supremacy of the federal tax lien over the claim for state taxes, but the nature of property to which the lien attached:

Here the license existed because the state had issued it. If the licensee acquired something of value, it was because the state had bestowed it upon him. Whatever value the license, as property, may have had to a purchaser depended upon its transferability. If it was transferable, it was because the state had made it so. If the state had seen fit to impose conditions upon issuance or upon transfer of property *it has wholly created,* that is the state's prerogative *so long as its demands are not arbitrary or discriminatory. Id.,* 281 F.2d at 728 (emphasis added).

The case at bar is different in two respects. First, not only the proceeds

from the bankrupt's liquor license, but the proceeds from his other business assets are involved here. While § 24074 is applicable to the latter proceeds, *see Doyle v. Coughlin,* 4th Dist., 1974, 37 Cal.App.3d 911, 917, 112 Cal.Rptr. 701, 705, the rationale of *State of California* is not, because the property sold is not state created. Second, as to transfer of the license itself, the condition imposed by § 24074 on which appellants rely, *viz.,* the sixth priority for distribution of the escrow funds, does not seek to benefit the state, but a particular group of creditors. Precisely such attempts by the states to prefer favored groups of creditors led to the Chandler Act's elimination of state created priorities from the Bankruptcy Act in 1938. *See In re Crosstown Motors, Inc., supra,* 272 F.2d at 227. Thus, while a state, as the creator of a liquor license, may validly impose conditions on its transferability for the state's own benefit, it may not, consistently with paramount federal law, impose conditions which discriminate in favor of particular classes of creditors. *Board of Trade v. Johnson,* 1924, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533, and *Hyde v. Woods,* 1877, 94 U.S. 523, 24 L.Ed. 264, are also distinguishable. Each held that a trading exchange could validly condition transfer of a bankrupt member's seat on payment of debts owed to other members of the exchange, who collectively constituted the exchange and thus had created the seats. As in the *State of California* case, the property involved in each case was only that created solely by the creditor(s), and the conditions on transfer were imposed solely for the benefit of the seat's creator(s).

Appellant's suggestion that title to the escrow funds did not pass to the trustee under § 70(a)(5) is also wrong. That section provides that the trustee is vested by operation of law with title to "property . . . to which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, im-

pounded, or sequestered . . . ." Under § 24074 title to the funds in escrow after ABC approval of the transfer was in the transferor, Leslie, subject to the claims of bona fide creditors. If the transferor disputes any claim, the creditor must attach the funds and institute judicial proceedings. Clearly, therefore, the escrow funds are "property . . . which . . . might have been levied upon and sold under judicial process . . . or otherwise seized, impounded, or sequestered . . . ."

Affirmed.