**In re DEL MISSION LIMITED, Debtor.**

**Harold S. TAXEL, Trustee for Del Mission Limited, Plaintiff,**

**v.**

**The STATE OF CALIFORNIA EMPLOYMENT DEVELOPMENT DEPARTMENT; the State of California State Board of Equalization; and Does 1 Through 20, inclusive, Defendants.**

**Adv. No. 90–90018–H7.
Bankruptcy No. 87–07589–H7.**

United States Bankruptcy Court,
S.D. California.

July 10, 1990.

Jeffry A. Davis and David J. Lustberg, Gray, Cary, Ames & Frye, San Diego, Cal., for Trustee Taxel.

John K. Van De Kamp, Atty. Gen., of the State of Cal., Arthur C. De Goede, Asst. Atty. Gen., Los Angeles, Cal., for defendants.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

Presently pending is the State of California's motion to dismiss the trustee's com-

plaint, and the trustee's motion for summary judgment. Harold S. Taxel ("Taxel") is the trustee for the Chapter 7 debtor, Del Mission Limited. The California Employment Development ("EDD") and the California State Board of Equalization ("the Board") are administrative agencies of the State of California and the defendants in the trustee's action for recovery of over payment of penalties and interest, and for imposition of sanctions for violation of the automatic stay.

At issue is whether the trustee in a bankruptcy proceeding can recover payments required by the State as a condition to its allowing the sale of a liquor license. The payments consisted of unpaid taxes and post-petition interest and penalties on pre-petition claims. Also at issue is whether the State violated the automatic stay under 11 U.S.C. § 362(a)(6) when it failed to obtain relief from stay before demanding such payments.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157 and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### FACTS

Del Mission Limited ("Del Mission") filed a Chapter 11 case on October 20, 1987. The bankruptcy case was subsequently converted to a case under Chapter 7 on April 17, 1989.

Plaintiff Taxel, was appointed as Del Mission's Chapter 11 trustee by order of this court entered July 7, 1988. Taxel continued to act as the trustee in Del Mission's bankruptcy case subsequent to the conversion, and brought this action as a representative of the estate pursuant to 11 U.S.C. § 323.

On November 23, 1988, this court entered its order approving the sale of the debtor's business and its off-premises liquor license, free and clear of liens in interest, pursuant to 11 U.S.C. § 363(f). The approved sale was for the sum of $185,000 cash, plus an additional amount equal to the wholesale price of the inventory of the business.

On December 22, 1988, pursuant to a "notice of amounts due and conditional release" sent by the Board, and dated December 20, 1988, Taxel paid $68,128.07 to the Board for alleged outstanding taxes, interest and penalties. This payment was required by the Board before it would allow the liquor license transfer to proceed. The $68,128.07 payment was comprised of unpaid taxes in the amount of $49,336.27, interest in the amount of $11,408.79 and penalties in the amount of $7,383.01.

On December 22, 1988, Taxel paid $14,244.86 to the EDD for alleged outstanding taxes, interest, and penalties required by the EDD to be paid in order to transfer Del Mission's liquor license. This payment was comprised of unpaid taxes in the amount of $11,363.86, interest in the amount of $1,319.00, and penalties in the amount of $1,562.00. These payments were made under protest by Taxel. On July 7, 1989, Taxel requested a refund from the Board of $8,768.00 for pre-petition penalties, and $5,468.00 for post-petition interest on the pre-petition taxes. On the same date, Taxel requested a refund from the EDD of $842.00 for pre-petition taxes. The total amounts of the refunds requested from the Board and the EDD were $14,236.00 and $1,368.00, respectively.

The EDD denied Taxel's request for a refund in the amount of $1,368.00. The Board also denied Taxel's claim for a refund in the amount of $14,236.00.

The State continues to withhold the monies that were paid by the bankruptcy estate.

### DISCUSSION

The trustee seeks to recover money paid to the state for delinquent taxes and post-petition interest and penalties on pre-petition claims. The trustee maintains: 1) the State was not entitled to collect the portions of the interest that represented post-petition interest on the pre-petition claims, according to 11 U.S.C. § 502(b)(2); and 2) the State's claims for pre-petition penalties

were inappropriate because such penalties must be subordinated to the interest of unsecured creditors according to 11 U.S.C. § 726(a)(4) and there were insufficient funds to pay all unsecured creditors in full. Further, the trustee seeks a determination that the State violated the automatic stay when it refused to allow the sale of the debtor's liquor license without payment of the delinquent taxes and post-petition interest and penalties.

The State maintains that the power to restrict the sale of the license is governed by California Business and Professions Code § 24049, and that the State statute overrides conflicting bankruptcy provisions. The State also urges that the Bankruptcy Code does not disallow the payment of post-petition interest and penalties. This court disagrees.

The court's holding is three-fold: 1) the State is entitled to the portion of the payments attributable to unpaid taxes; 2) the trustee is entitled to recover payments made to the State for post-petition interest and penalties; and 3) the State violated the automatic stay provisions of the Code by not seeking relief from stay before demanding the subject payments.

*Delinquent Taxes:*

■ The only amounts payable under California Business and Professions Code § 24049, as a condition to the transfer of a liquor license by the trustee in bankruptcy, are taxes due and interest accrued to the date of filing of the bankruptcy petition. *State Board of Equalization v. Stodd,* 500 F.2d 1208 (9th Cir.1974). The State is enti-

tled to collect tax claims as a condition to the transfer of liquor licenses which are assets of a bankrupt estate, so long as such taxes remain delinquent. *Matter of Professional Bar Co., Inc.,* 537 F.2d 339, 341 (9th Cir.1976).

■ Federal bankruptcy law is applied to determine priorities among creditors with respect to distribution of the estate as diminished by such collections. *Id.* The State is entitled to the tax claims under the priority scheme as set forth in 11 U.S.C. § 726(a)(1).[1]

Accordingly, the Board and the EDD are entitled to retain the portion of the payments attributable to unpaid taxes in the amounts of $49,336.27 and $11,363.86, respectively.

*Post–Petition Interest and Penalties:*

■ The post-petition interest payments were inappropriate under § 502 of the Code. 11 U.S.C. § 502(b)(2)[2] provides that a claim shall be allowed except to the extent that such claim is for unmatured interest. Interest on taxes due pre-petition ceases to accrue as of the date of the filing of the bankruptcy petition. *In re Petite Auberge Village, Inc.,* 650 F.2d 192 (9th Cir.1981); *In re Nite Lite Inns,* 13 B.R. 900, 911 (Bankr.S.D.Cal.1981).

■ The penalty payments were also inappropriate in light of the fact that there were insufficient funds in the estate to pay all unsecured creditors in full. 11 U.S.C. § 726(a)(4)[3] provides that a creditor with an allowed claim for any penalty is subordinated to the interests of unsecured credi-

---

**1.** 11 U.S.C. § 726(a)(1) provides that property of the estate shall be distributed first, in payment of claims of the kind specified in, and in the order set forth in, § 507. Section 507(a)(7)(C) provides for payment to governmental units for taxes required to be collected from a debtor who is liable in any capacity.

**2.** 11 U.S.C. § 502(b)(2) reads:
(b) Except as provided in subsections (e)(2), (f), (g), (h), and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

(2) such claim is for unmatured interest.

**3.** 11 U.S.C. § 726(a)(4) reads:
(a) Except as provided in § 510 of this title, property of the estate shall be distributed—
(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim.

tors, among other claimants. Thus, where, as in this case, there are insufficient funds in the estate to pay 100% of all unsecured claims, a creditor with an allowed claim for penalties is not entitled to receive payment on these penalties.

Additionally, the State relies on *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) to support its argument that post-petition interest is an allowable claim. It is a general rule that administrative claims should not include interest as part of such claims. *In re Peaches Records & Tapes, Inc.*, 102 B.R. 193 (9th Cir. BAP 1989). However, the United States Supreme Court in *Ron Pair* held that an exception to the general prohibition against post-petition interest payments exists *only* where the creditor's pre-petition claim is *oversecured.* The United States Supreme Court, construing 11 U.S.C. § 506(b), explained:

> The relevant phrase in § 506(b) is: "There shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." "Such claim" refers to an *oversecured* claim. The natural reading of the phrase entitles the holder to an *oversecured* claim to post-petition interest....

109 S.Ct. at 1030 (emphasis added).

The State presented no evidence that its claim was oversecured. Thus, the State's reliance on *Ron Pair* is misplaced. Under § 506(b) and *Ron Pair*, secured creditors are entitled to interest on their claim only out of the "security cushion." The record supports no such security cushion. Undersecured creditors may not recover interest from the estate's unencumbered assets before unsecured creditors have recovered any principal. *See, In re Peaches Records & Tapes, Inc.*, 102 B.R. 193 (9th Cir. BAP 1989); *United Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Furthermore, the State's claim is not secured.

Additionally, 11 U.S.C. § 726(a)(4) provides that distribution to creditors with an allowed claim for penalties is subordinated to payment to unsecured creditors. Since there are insufficient funds in the estate to pay 100% of all unsecured claims, the State was not entitled to receive payment on the pre-petition penalties, and therefore should be required to return the amounts received to the bankruptcy estate.

The State argues that since it has the power to define the nature of state-created property rights (such as liquor licenses), the State may place any reasonable condition on the transfer of such licenses, irrespective of conflicting federal bankruptcy law. The State cites *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1403 (9th Cir. 1986) as controlling authority for this proposition.

In *Farmers Markets*, the court stated that the nature of the debtor's property rights define the parties' proprietary interests. It follows then that the State had authority to restrict the transfer of the liquor license until the receipt of all "delinquent taxes." But from this, the State draws the erroneous conclusion that "delinquent taxes" include pre-petition penalties and post-petition interest on pre-petition taxes.

*Farmers Markets* is distinguishable from the case at bar. *Farmers Markets* held only that under California Business & Professions Code § 24049, the debtors' estate took the California liquor license from the debtors subject to the right of the State of California to receive payment for *certain delinquent taxes.* The Ninth Circuit did not hold that the State of California was entitled to recover pre-petition penalties and post-petition interest on pre-petition taxes as part of those delinquent taxes. *Farmers Markets* did not in any way contravene *Petite Auberge*, which explicitly prohibited payments for post-petition interest and penalties.

The State also cites *In re Anchorage International Inn, Inc.*, 718 F.2d 1446 (9th Cir.1983). *Anchorage* does, in fact, hold that the provisions of an Alaska statute requiring the payment to creditors of a liquor establishment before the transfer of a liquor license does not conflict with the federal bankruptcy distribution scheme.

However, the court made it clear that its holding did not conflict with *Petite Auberge*. The court explained in a footnote:

> *In re Petite Auberge Village, Inc.*, 650 F.2d 192 (9th Cir.1981), in which the court denied California's claim of a superior right to the proceeds of the sale of a liquor license for post-petition interest and tax penalties, does not compel a contrary result. The court explicitly denied the former claim on the ground that "interest on a debt stops when the bankruptcy petition is filed," *id.* at 194, and the latter on the basis of the bankruptcy law's strong policy against enforcing penalties unrelated to pecuniary loss since such claims penalize creditors *not* delinquent tax payers, *id.* at 194, 196. [Citation]. The court did state in passing that the liquor license was an "asset[ ] of the estate even before the sale of the license" and hence its proceeds, as "part of the bankrupt's estate ... could not be used to pay tax penalties and post-petition interest," 650 F.2d at 195. The court did not, however, gainsay the general rule of bankruptcy that where a pre-petition entitlement encumbers an asset, only the residual value of the asset passes into the estate. In fact, this was precisely the basis on which *Petite Auberge* acknowledged the prior right of the state to payment of its taxes. *See id.* at 194.

*Anchorage International* at 1451, n. 5 (emphasis in original).

*Anchorage* is distinguishable from the case at bar in several respects. Under Alaska law, unlike California law, consent to the sale of the license by the liquor-related creditors is required. Thus under the Alaska statute, a lien is created in favor of one group of creditors over another.

California law establishes no such lien rights. What the trustee received in the instant action was title to the unencumbered cash proceeds from a sale of a liquor business, not a license transferable only on the approval of certain creditors. *See Anchorage* at 1450 (distinguishing *In re Leslie*, 520 F.2d 761 (9th Cir.1975)).

The California statute differs from the Alaska statute in two other regards. The California statute prioritizes the distribution of the proceeds of the sale not only of the liquor license, but also of all other assets of the business. *Anchorage* at 1450. California further specifies the order of distribution among all claims regardless of whether the particular claim was related to the business. By contrast, the Alaska statute establishes priority for one particular group of creditors and one specific asset. *Id.*

Accordingly, the holding in *Anchorage International* is not controlling. Where the trustee has title to the proceeds of the estate, creditors are simply paid according to the priority scheme set forth in § 726 of the Code. Where there are insufficient funds to pay all unsecured creditors in full, pre-petition penalty claims are disallowed.

An additional facet of the State's argument is that because the interest in the liquor license is state-created, California Business & Professions Code § 24049 overrides conflicting bankruptcy law. The State is in error. It is true that the nature of the interest held by the licensee is that it can only transfer the license in accordance with California Business & Professions Code § 24049. The State draws the erroneous conclusion that § 726(a)(4) of the Code has no effect on the State where the sale of a liquor license is involved.

In *Matter of Professional Bar Co., Inc.*, 537 F.2d 339 (9th Cir.1976), the trustee in bankruptcy brought an action against state agencies to recover money paid to the state as a condition of the transfer of liquor licenses owned by the bankruptcy estate. The Ninth Circuit held that the State was entitled to its exactions under California Business & Professions Code § 24049. However, the court further held that *federal* and *not state law* must be applied to determine the distribution of the estate as diminished.

Thus, under *Professional Bar*, the State's withholding of the payments for post-petition penalties is inappropriate because its claim is subordinate to the unsecured creditors who will not be paid in full if withholding is permitted. Moreover, the

*Professional Bar* court did not hold that pre-petition penalties and post-petition interest on pre-petition taxes were required to be paid before the state would allow the transfer of a liquor license.

The *Professional Bar* court based its decision on *In re Leslie,* 520 F.2d 761 (9th Cir.1975). *Leslie* involved the sale of a liquor license where the proceeds of the sale were placed in escrow pursuant to a California statute,[4] and subsequently distributed to the creditors in accordance with a particular priority scheme. The Ninth Circuit held that the proceeds were distributable in accordance with priorities established in *bankruptcy* and not under the priority scheme delineated in the state statute.

*Leslie* made it clear that "[c]onflicting priorities established by state law *must yield upon the intervention of bankruptcy to superior federal law." Id.* at 762 (emphasis added). The court agreed with the state in one respect, namely: any value the licensee had in the license resulted from the State's grant of the license to him.

> But the court explained:
> while a state, as the creator of a liquor license, may validly impose conditions on its transferability for the state's own benefit, it may not, consistently with paramount federal law, impose conditions which discriminate in favor of particular creditors.

*Id.* at 763.

It is this court's intention to avoid such discrimination. Any other decision would frustrate the primary objective of the Bankruptcy Code: providing for an equitable distribution of assets among all creditors. Accordingly, the Board and the EDD are not entitled to payments received for the penalties and post-petition interest. The Board and the EDD are therefore required to return the pre-petition penalties in the amounts of $8,768.00 and $842.00, respectively, and the post-petition interest in the amounts of $5,468.00 and $526.00, respectively.

---

**4.** California Business & Professions Code § 24074 provides that proceeds from the sale of a liquor license are to be placed in an escrow

*Violation of the Automatic Stay:*

 The State's threat of denying the transfer of the liquor license without receipt of payment of the post-petition interest, violated the automatic stay provisions of 11 U.S.C. § 362. The State's refusal to allow the sale of the license to proceed before such payments were made constituted an act to collect or recover a claim in violation of 11 U.S.C. § 362(a)(6). *In re Farmers Markets, Inc.,* 792 F.2d 1400, 1404 (9th Cir.1986).

In addition, 11 U.S.C. § 362(a)(3) prohibits any act to obtain possession of property of the estate or of property from the estate, or to exercise control over property of the estate. The conduct of the State in disallowing the transfer of the license until receipt of payment, represents an effort to obtain or exercise control over property of the estate in violation of the automatic stay. Finally, the State's continued refusal to refund the property of the estate violates 11 U.S.C. § 362(a)(3).

## CONCLUSION

The State is entitled to the payments it received in satisfaction of delinquent taxes. The trustee is entitled to a refund of the payments it made to the Board and the EDD for post-petition interest and penalties. Further, this court finds that the State violated the automatic stay when it failed to seek relief from stay before seeking to obtain payment. The trustee may now move to determine the propriety of sanctions against the State.

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Counsel for the trustee is directed to file with this court an appropriate order in conformance with this Memorandum decision within ten (10) days from the date of entry hereof.

account before being distributed to creditors when the sale of the license is made before the filing of the bankruptcy petition.